IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAUSCH CREEK LAND, L.P., | : | Civil No. 1:21-CV-01745 |
| Appellant, | : | |
| v. | : | |
| FULTON BANK, N.A., | : | |
| Appellee. | : | Judge Jennifer P. Wilson |

### **MEMORANDUM**

This is an appeal from an opinion and order entered by the United States Bankruptcy Court for the Middle District of Pennsylvania that denied a pending motion for contempt, granted a motion to compel, and denied a request for damages.[1] (Doc. 1-1.) Before the court are the merits of the appeal. For the reasons that follow, the court will grant in part and deny in part the appeal, vacate the bankruptcy court's order, and remand for further proceedings.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The lengthy factual and procedural history of this case has been detailed by the bankruptcy court in two opinions, the latter of which gives rise to the instant appeal. (*See* Docs. 11-20, 11-36.) As explained by the bankruptcy court, in the underlying bankruptcy case:

> The Debtors are Kimmel's Coal and Packaging, Inc. ("Debtor" or "Kimmel's Coal"), Meadowbrook Coal Company, Inc.

---
[1] The underlying bankruptcy case is located at docket number 1:18-bk-01609, which is the docket number for four jointly administrated bankruptcy cases.

1

>("Meadowbrook"), Michael Coal Company, Inc. ("Michael Coal"), Kimmel's Power Plant Services, Inc. ("Kimmel's Power"), and Kimmel's Mining Company, Inc. ("Kimmel's Mining" and collectively with Kimmel's Coal, Meadowbrook, Michael Coal, Kimmel's Power, and Kimmel's Mining, the "Debtors").  An involuntary chapter 7 petition was filed against Kimmel's Coal on April 19, 2018.  On June 5, 2018, the Court converted the Kimmel's Coal case to one under chapter 11.  Meadowbrook, Michael Coal, Kimmel's Power, and Kimmel's Mining each filed voluntary chapter 11 petitions on or around June 12, 2018.  On June 21, 2018, the Court ordered joint administration of the Debtors' cases.

(Doc. 11-20, p. 2.)[2]  Prior to filing for bankruptcy, the Debtors engaged in coal mining, coal sales, and coal shipping. (*Id.* at 3.)  In order to conduct these activities, the Debtors possessed several permits from the Pennsylvania Department of Environmental Protection ("PA DEP"). (*Id.*)  To obtain these permits, the PA DEP requires that an applicant post bond intended to secure performance of the mining company's obligation to restore an active mine "to a previous or more natural state once mining activities cease (a process known as 'reclamation')." (*Id.* at 3 n.5.)  The Debtors fulfilled these bond requirements via letters of credit issued by Appellee Fulton Bank, N.A. ("Fulton Bank"). (*Id.* at 4.)

After filing for bankruptcy, the Debtors "elected to pursue the sale of substantially all their assets." (*Id.* at 5.)  As such, the "Debtors entered into an Asset Purchase Agreement (the "APA") with [Appellant] Rausch Creek on June 1, 2018 for the sale of all its real property . . . and substantially all its personal

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

property[,]" including the Debtors' mining permits.  (Doc. 11-36, p. 4.)  This sale was approved by the bankruptcy court on September 4, 2018, after review of an unopposed motion.  (*Id.* at 5.)

Following this sale, Rausch Creek undertook efforts to transfer mining permits from the Debtors to itself.[3]  (*Id.* at 6–8.)  As part of these efforts, Rausch Creek submitted an initial application to the PA DEP, which was informally rejected due to Rausch Creek's failure to demonstrate a legal right to conduct mining activities on the land covered by the permit application.[4]  (*Id.* at 5.)  Once it became evident that Rausch Creek had not filed a new permit application with the PA DEP, Fulton Bank filed a motion with the bankruptcy court to compel Rausch Creek's performance under the APA.  (*Id.* at 6–8.)  Specifically, Fulton Bank sought to compel Rausch Creek to continue to pursue its application with the PA DEP for transfer of the mining permits at issue, including obtaining its own bond to replace the letters of credit extended by Fulton Bank on the Debtors' behalf.  (*Id.* at 6–7.)

---

[3] There are only two permits at issue in the instant appeal: the Branchdale Permit and the White Pine Permit.  (Doc. 11-36, p. 3.)  Accordingly, when referencing the "permits," the court refers to these two permits.

[4] Rausch Creek lacked the legal authority to enter all of the land included as the subject of the permit because a lease of the land held by the Debtors had expired and was unable to be renewed by Rausch Creek.  (Doc. 11-36, p. 5.)

3

On July 8, 2019, the parties entered into a stipulation indicating that, inter alia, Rausch Creek would file an application for a new permit and would "prosecute the application diligently." (*Id.* at 7.) While Rausch Creek initially complied with the stipulation and filed a new permit application with the PA DEP, Fulton Bank felt that the new application was insufficient since the subject of the permit application did not cover all of the land that Fulton Bank's letters of credit covered.[5] (*Id.* at 8.) The bankruptcy court therefore held a hearing on Fulton Bank's motion to compel on January 29, 2020. (*Id.*)

Following this hearing, on June 1, 2020, the bankruptcy court issued an opinion and order finding that "Rausch Creek did not assume liability *at Closing* for reclamation of the land . . . pursuant to the terms of the APA . . . [or] the Sale Order or any of its incorporated terms of sale." (*Id.* at 8–9 (quoting Doc. 11-20, pp. 19–20 (emphasis in original)).) "The Court further held the APA and Sale Order likewise did not 'require Rausch Creek to obtain alternative facilities acceptable to the PA DEP to secure any obligation under the Permits after which the Fulton Letters of Credit would be canceled and withdrawn and Fulton would have no further liability or obligation thereunder.'" (Doc. 11-36, p. 9 (quoting Doc. 11-20, p. 19).) However, this decision left open the possibility that Rausch

---

[5] As a result, Fulton Bank would retain some degree of reclamation liability on the mining sites that Rausch Creek had purported to purchase in the APA.

4

Creek could be required to secure a permit from the PA DEP and assume reclamation liability *after* closing on the APA.

Shortly after the bankruptcy court issued this decision, Rausch Creek withdrew its application with the PA DEP in favor of filing a new application which reduced the amount of land covered by the permit and the bond requirement "from approximately 111 acres to only 21 acres." (Doc. 11-36, p. 9.) In response, Fulton Bank filed a renewed motion to compel, a motion for contempt, and a request for damages with the bankruptcy court.

On September 28, 2021, the bankruptcy court issued an opinion and order denying Fulton Bank's pending motion for contempt, granting Fulton Bank's motion to compel, and denying Fulton Bank's request for damages. (Doc. 11-36.) The main issue in this decision is "whether Rausch Creek is obligated to apply for transfer of the Permits and pursue liability for reclamation of the Mines and to replace the Fulton Letters of Credit as part of that process." (*Id.* at 10.) The bankruptcy court answered this question in the affirmative. (*Id.* at 11–29.)

On October 13, 2021, Rausch Creek filed a notice of appeal of this order, arguing that the bankruptcy court erred as a matter of law and otherwise abused its discretion. (Doc. 1.) On the same date, Rausch Creek filed a motion to stay the appeal pending proceedings with the bankruptcy court. (Doc. 2.) On October 15, 2021, the court stayed the appeal pending the bankruptcy court's proceedings.

(Doc. 4.)  Despite the stay, the PA DEP and the Trustee filed answers to the notice of appeal, and Rausch Creek filed its brief on November 12, 2021.  (Docs. 6, 7, 8.)  On November 26, 2021, the court received copies of the designated record from the bankruptcy court.  (Docs. 11, 12, 13, 14, 15, 16, 17, 18.)

On December 8, 2021, the Trustee filed a notice that the underlying bankruptcy proceedings had resolved and requesting that the stay be lifted.  (Doc. 21.)  In response, the court lifted the stay on December 10, 2021.  Thereafter, the court received briefs from the Trustee, Fulton Bank, and the PA DEP.  (Docs. 24, 25, 26.)  Rausch Creek timely filed reply briefs.  (Docs. 27, 28.)  Thus, the appeal is ripe for disposition.[6]

## JURISDICTION

The court has jurisdiction under 28 U.S.C. § 158(a)(1), which grants district courts jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts.

## STANDARD OF REVIEW

The court reviews bankruptcy court decisions of law de novo.  *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).  The bankruptcy court's

---

[6] Rausch Creek has also filed a request for oral argument on the merits of the appeal.  (Doc. 29.) The court finds that oral argument is not warranted in this case since the record and the parties' briefing adequately presents the issues for the court's review.  The court accordingly denies the request for oral argument.

findings of fact will only be set aside if clearly erroneous. FED. R. BANKR. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *In re O'Brien*, 188 F.3d at 122.

## DISCUSSION

Rausch Creek raises the following issues and arguments on appeal: that (1) the bankruptcy court committed an error of law or abuse of discretion in ruling that mining permits can be partially transferred under Pennsylvania law; (2) the bankruptcy court committed an error of law or abuse of discretion in interpreting the Asset Purchase Agreement to require a partial transfer of a mining permit in contravention of Pennsylvania's mining permit transfer law; (3) the bankruptcy court committed an error of law or abuse of discretion in placing the burden of proof upon Rausch Creek to show whether a mining permit can be partially transferred; and (4) the bankruptcy court committed an error of law or abuse of discretion in ruling that Rausch Creek was judicially estopped from asserting a mining permit cannot be partially transferred. (Doc. 8.)

With respect to Rausch Creek's first argument on appeal, that the bankruptcy court erred as a matter of law or otherwise abused its discretion in ruling that mining permits can be partially transferred under Pennsylvania law, the

court finds that Rausch Creek misreads the bankruptcy court's opinion. Indeed, counter to Rausch Creek's assertions, the bankruptcy court explicitly noted that it was "not deciding whether a permit can be transferred in part." (Doc. 11-36, p. 21 n.20 ("The Court is not deciding whether a permit can be transferred in part. The Court only holds that under the Sale Order and APA Rausch Creek is obligated to submit an application pursuant to § 86.56 seeking transfer of the Permits or as much of them as is possible. Whether any such transfer ultimately is approved is within the purview of the PA DEP and subject to applicable state law.").) Therefore, to the extent that Rausch Creek misconstrues the bankruptcy court's order, its appeal will be denied.

However, to the extent that Rausch Creek bases its appeal on its theory that the bankruptcy court's order compelled it to do something that it cannot do as a matter of law, the court will grant the appeal. It is apparent from the record that there was a fundamental misunderstanding between the bankruptcy court and the parties with respect to the definition of the term "transfer" in the context of Rausch Creek's purported purchase of the Debtors' assets in the APA, including its permits. (*See* Doc. 21-1, p. 4 ("Incredibly, until the writing of this Memorandum it appears the Court and Rausch Creek were each unaware of the other's different interpretation of this critical word. Since the different meanings ascribed by the parties lead to such disparate conclusions in this case, this issue (more than any

8

other) explains why Rausch Creek and the Court seem to have irreconcilable interpretations of the APA, the Sale Order, the Stipulation, and the Court's opinions in *Kimmel's I* and *Kimmel's II*.")[7].) This misunderstanding, and the confusion that has stemmed from it, renders this court's analysis of the questions presented in this appeal premature, as the court finds that the bankruptcy court should be the first to address these issues. Indeed, the bankruptcy court has suggested that a remand of the case is appropriate. (Doc. 21-1, p. 19 ("The Court, therefore, suggests that the proper remedy would be for this Court's Order in *Kimmel's II* to be vacated and the matter remanded to correct the above errors and to address the potentially unresolved (and primary) issue of responsibility for pre-existing reclamation liability.").) The court will therefore grant the appeal, vacate the bankruptcy court's September 28, 2021 order, and remand the case for further proceedings.

Since the remainder of the questions presented by Rausch Creek on appeal are intertwined with the parties' understanding of the term "transfer" in the context of the APA, and because the court has already determined that a remand is appropriate, the court does not consider the remaining issues presented on appeal at

---

[7] *Kimmel's I* and *Kimmel's II* refer to the bankruptcy court's decisions on June 1, 2020 and September 28, 2021, respectively.

this time.  Indeed, a different decision by the bankruptcy court on remand could moot the issues presently on appeal.

## CONCLUSION

For the foregoing reasons, the court will grant in part and deny in part the appeal, vacate the bankruptcy court's order, and remand for further proceedings. (Doc. 1.)  An appropriate order follows.

s/Jennifer P. Wilson  
JENNIFER P. WILSON  
United States District Court Judge  
Middle District of Pennsylvania

Dated: August 26, 2022